**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

**THERESA MAE FULTON** **PLAINTIFF**

**V.** **CIVIL ACTION NO. 3:15CV13 HTW-LRA**

**CAROLYN W. COLVIN,**
**ACTING COMMISSIONER OF SOCIAL SECURITY** **DEFENDANT**

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

Theresa Fulton appeals the final decision denying her applications for a period of disability insurance benefits ("DIB") and supplemental security income ("SSI"). The Commissioner requests an order pursuant to 42 U.S.C. § 405(g), affirming the final decision of the Administrative Law Judge. Having carefully considered the hearing transcript, the medical records in evidence, and all the applicable law, the undersigned recommends that the decision be affirmed.

In 2011, Plaintiff filed applications for SSI and DIB alleging a disability onset date of January 30, 2011, due to rheumatoid arthritis, depression, anxiety, and high blood pressure. She is a high school graduate and was approximately 43 years old on her alleged onset date, with previous work experience as an office worker. Following agency denials of her application, an Administrative Law Judge ("ALJ") rendered an unfavorable decision finding that she had not established a disability within the meaning of the Social Security Act. The Appeals Council denied Plaintiff's request for review. She now appeals that decision.

After reviewing the evidence, the ALJ concluded that Plaintiff was not disabled under the Social Security Act. At step one of the five-step sequential evaluation,[1] the ALJ found that Plaintiff has not engaged in substantial gainful activity since her alleged onset date. At steps two and three, the ALJ found that although Plaintiff's degenerative joint disease of the spine, sacroiliac joint arthropathy, low back pain, cervicalgia, chronic pain syndrome consistent with fibromyalgia, heel spur, anxiety, depression, hypertension, chronic obstructive pulmonary disease (COPD), and obesity were severe, none of these impairments met or medically equaled any listing. At step four, the ALJ found that Plaintiff had the residual functional capacity to perform light work except: "no climbing ladders, ropes, scaffolds; occasional climbing ramps/stairs; occasional stooping, kneeling, crouching, crawling; no exposure to heights/ hazards; avoid concentrated exposure to pulmonary irritants; and limited to simple routine tasks." Based on vocational expert testimony, the ALJ concluded that given Plaintiff's age, education, work experience and residual functional capacity, she could perform her past relevant work as an office-worker; she could also perform work as a router, ticket-seller, and ticket-taker.[2]

---

[1]Under C.F.R. § 404.1520, the steps of the sequential evaluation are: (1) Is plaintiff engaged in substantial gainful activity? (2) Does plaintiff have a severe impairment? (3) Does plaintiff's impairment(s) (or combination thereof) meet or equal an impairment listed in 20 C.F.R. Part 404, Sub-part P, Appendix 1? (4) Can plaintiff return to prior relevant work? (5) Is there any work in the national economy that plaintiff can perform? *See also McQueen v. Apfel*, 168 F.3d 152,154 (5th Cir. 1999).

[2]ECF No. 9, p. 25.

**Standard of Review**

Judicial review in social security appeals is limited to two basic inquiries: "(1) whether there is substantial evidence in the record to support the [ALJ's] decision; and (2) whether the decision comports with relevant legal standards." *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996) (citing *Carrier v. Sullivan*, 944 F.2d 243, 245 (5th Cir. 1991)). Evidence is substantial if it is "relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance." *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995) (quoting *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992)). This Court may not re-weigh the evidence, try the case *de novo*, or substitute its judgment for that of the ALJ, even if it finds evidence that preponderates against the ALJ's decision. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994).

**Discussion**

Plaintiff argues that the ALJ's decision should be reversed because (1) substantial evidence does not support the ALJ's residual functional capacity assessment; (2) substantial evidence does not support the ALJ's credibility determination; and, (3) the ALJ's step five determination was erroneous. The Court rejects these arguments for the reasons that follow.

The sole responsibility for determining a claimant's residual functional capacity rests with the ALJ and will not be disturbed when it is supported by substantial evidence. A. 20 C.F.R. § 404.1546 (c) (2010). Here, Plaintiff argues the ALJ's residual functional

capacity assessment is unsupported because the ALJ failed to properly evaluate her treating physician's opinion. She contends that over the course of several years, her general practitioner, Dr. Augustus Soriano, has treated her for a variety of impairments, including degenerative disc disease, anxiety, depression, chronic pain, blood pressure, headaches, weakness, chest pain, and COPD. In 2011 and 2013, Dr. Soriano submitted residual functional capacity assessments of Plaintiff's physical and mental limitations indicating that Plaintiff is capable of performing less than sedentary work.[3] As her first point of error, Plaintiff argues that the ALJ improperly rejected Dr. Soriano's opinions without performing the detailed analysis set forth in 20 C.F.R. § 404.1527(d)(2).

Generally, the "opinion of the treating physician who is familiar with the claimant's impairments, treatments and responses, should be accorded great weight in determining disability." *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000). But an ALJ is "not required to credit a claimant's treating physicians against all evidence to the contrary." *Vansa v. Astrue*, 423 F. App'x 381, 383 (5th Cir. 2011). The Fifth Circuit has long held that "absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician *only* if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)(2)." *Newton*, 209 F.3d. at

[3]Although the ALJ's decision only cites the medical source statement submitted by Dr. Soriano in 2011, his opinions are substantially similar, and a reading of the ALJ's decision reflects that both were considered in conjunction with the evidence as a whole.

453 (emphasis in original). The statutory analysis requires the ALJ to consider the length of treatment; the frequency of examination; the nature and extent of the treatment relationship; the extent to which his opinions were supported by the medical record; the consistency of his opinion with the record as a whole; and the specialization of the physician. *Id*. at 456. The ALJ is not required, however, to consider each of these factors when "there is competing first-hand medical evidence and the ALJ finds as a factual matter that one doctor's opinion is more well-founded than another." *Walker v. Barnhart*, 158 F.App'x 534, 535 (5th Cir. 2005). The ALJ is responsible for resolving conflicts in the evidence. As such, an ALJ's decision supported by substantial, contradictory, first-hand evidence from another physician does not require the detailed analysis set forth in 20 C.F.R. § 404.1527(d)(2).

Further, the treating physician's rule is "not an ironclad rule." *Garcia v. Colvin*, 2015 WL 4760536, at *4 (5th Cir. Aug. 13, 2015). "[S]uch opinions can be disregarded if they are 'brief and conclusory, not supported by medically acceptable clinical diagnostic techniques, or otherwise unsupported by the evidence." *Perez v. Barnhart*, 415 F.3d 457, 466 (5th Cir. 2005) (quoting *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir.1994)).

Here, the ALJ determined that Dr. Soriano's opinion was entitled to some, but not great weight because:

> . . . . Dr. Soriano opined the claimant's impairments would cause her to miss work more than four times per month due to physical problems, and she could not perform even simple tasks due to extreme psychological

> limitations. At the end of the form, [he] noted that most of the claimant's limitations were due to her anxiety medications, pain medications, and headaches caused by uncontrolled hypertension. Dr. Soriano's opinion appears to rest at least in part on an assessment of the claimant's mental impairments, which is outside the doctor's area of expertise. Moreover, Dr. Soriano's opinion regarding limitations resulting from medication side effects is excessive compared to the claimant's daily living activities, which include driving and caring for young children.[4]

In addition, the ALJ observed that most of Dr. Soriano's treatment had been routine and conservative in nature. When compliant, Plaintiff's blood pressure and pain medications were generally effective, and by her own admission, she stopped taking anti-depressants because she did not believe she needed them.[5] It is well-established that an ALJ may consider the failure to comply with treatment as an indication of non-disability. *See Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990).

The ALJ also reviewed first-hand medical evidence from examining and treating sources contradicting the degree of limitations assigned by Dr. Soriano. Diagnostic test results from December 2011 revealed no abnormality in Plaintiff's right foot, and only minimal osteophytes in her lumbar spine. According to the ALJ, a physical examination performed by consulting examiner, Dr. Anthony Fouts, also failed to "document factors indicative of pain of the intense, protracted, and disabling nature that the claimant alleges." Dr. Fouts found no evidence of "muscle wasting, muscle atrophy or weakness, significant limitation of motion, neurological deficit or other objective, observable

---

[4]ECF No. 9, p. 30.

[5]ECF No. 9, pp. 28-29, 87.

findings often associated with pain of the intense nature reported by the claimant." Plaintiff had a normal gait, and full range of motion in her upper and lower extremities with full motor strength. However, the ALJ assigned limited weight to Dr. Fouts's conclusions that Plaintiff could not perform activities on a repetitive basis or sit or stay in a fixed position. There were "no diagnostic studies demonstrating a significant physiological abnormality" to warrant such a limitation. Plaintiff had never been referred to a neurologist or orthopedist, and no physician had ever recommended surgery.[6]

The ALJ assigned great weight instead to a state agency physician's assessment that Plaintiff could perform a full range of light work. But she did not adopt it entirely. The ALJ credited Plaintiff's claims that her impairments would cause significant postural limitations, further limiting her residual functional capacity to "no climbing ladders, ropes, scaffolds; occasional climbing ramps/stairs; occasional stooping, kneeling, crouching, [and] crawling."[7]

Medical records from the Rush Pain Treatment Center – Plaintiff's other primary provider – support this assessment. Those records reveal that while Plaintiff underwent steroid and trigger point injections in 2012 to manage her neck and back pain, Plaintiff reported experiencing relief for up to three months at a time. No evidence of muscle or joint pain, swelling, or limitation of movement were noted in follow-up examinations in June 2013, despite Plaintiff's claims that she has difficulty lifting, standing, or sitting.

---

[6]ECF No. 9, pp. 27, 30, 271-276.

[7]*Id.* at 277-284.

Nor was there any evidence of neurological or musculoskeletal abnormalities observed in July 2013. She continued to exhibit a normal range of motion in her upper extremities with no joint tenderness or muscle weakness, and her gait was normal. Although she continued to report back pain in September 2013, Plaintiff acknowledged that it did not interfere with her ability to attend to her personal hygiene, or to get up from a bed and chair without assistance. That Plaintiff's activities may cause her pain or discomfort does not mandate a finding of disability. For pain to rise to the level of "disabling, the pain must be "constant, unremitting, and wholly unresponsive to therapeutic treatment." *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001).[8]

In terms of her mental impairments, Plaintiff maintains that Dr. Soriano's opinions are supported by his treatment records and the records from Weems Community Mental Health Center, which show treatment for anxiety and depression with symptoms of crying spells, poor sleeping habits, no motivation, mood swings, irritability, feeling on edge, and suicidal thoughts. She notes that Dr. Soriano prescribed various medications to treat her mental impairments, yet the ALJ rejected his opinions because they were "outside the doctor's area of expertise."[9]

Plaintiff's mental health records from Weems Community Mental Health Center reveal her treatment was minimal, lasting approximately two months. Although Plaintiff presented with a depressed mood during her mental health assessments, her examinations

---

[8]ECF No. 9, pp. 511-544.

[9]*Id.* at 30.

revealed "few psychological abnormalities." She denied hallucinations, delusions, or suicidal ideation. She had average intelligence, fair insight and judgment, logical thought content, and no difficulties with memory or attention. She also had a flat affect, but was otherwise fully oriented, cooperative, friendly, well-groomed, and reported that she was able to perform her daily activities. Follow-up visits also reveal that Plaintiff was non-compliant with her medication and last received treatment in July 2012.[10]

The ALJ did not err in considering Dr. Soriano's lack of mental health expertise. *Moore v. Sullivan*, 919 F.2d 901, 904-05 (5th Cir. 1990) (ALJ properly discredited treating physician's opinion that claimant who suffered from coronary artery disease was unable to work and relied on contrary findings by two specialists, where treating physician was only a general practitioner). "The opinion of a specialist generally is accorded greater weight than that of a non-specialist." *Newton,* 209 F.3d at 455 (citation omitted). Substantial evidence supports the ALJ's decision to weigh the opinion of consultative psychological examiner, Dr. Jan Boggs, more heavily. Contrary to Dr. Soriano's assessment, Dr. Boggs's examination did not reveal that Plaintiff would have difficulties performing simple, routine tasks. Her remote recall was adequate and she was fully oriented on examination. She appeared to have average intelligence and could repeat five digits forward and four in reverse. She understood two out of three problem-solving situations; was able to manage her finances; and, could perform her daily

[10]ECF No. 9, pp. 327-340.

activities. Despite her depressive and anxiety disorder diagnoses, Dr. Boggs concluded that Plaintiff was capable of employment.[11]

In August 2011, a state agency psychiatrist concurred that Plaintiff's anxiety and depression would only mildly limit her ability to perform daily activities and maintain concentration, persistence, or pace. The consultant opined that she would be moderately restricted in social functioning, but would be able to understand and follow directions with adequate attention and concentration to complete routine, repetitive tasks for 2-hour periods in an 8-hour workday. She could also maintain appropriate interactions with coworkers, supervisors, and the general public; perform low stress work; adapt to routine work changes; and, complete a normal workweek without excessive interferences from psychologically based factors. The ALJ explained that she gave this assessment "significant but not great weight" because the evidence documented only mild social limitation. Such a finding is consistent with Plaintiff's mental health records, Dr. Bogg's examination findings, and Plaintiff's own testimony.[12]

In sum, Plaintiff essentially maintains that the disability determinations of her treating physician should prevail over contrary evidence in the record. Conflicts in evidence are for the Commissioner to resolve, not this Court. *Hernandez v. Astrue*, 269 F. App'x 511, 515 (5th Cir. 2008). The ALJ considered competing medical opinions from both examining and non-examining physicians. Substantial evidence supports her

---

[11]ECF No. 9, pp. 226-230.

[12]*Id.* at pp. 231-244, 262-269.

decision that the medical source statements of Plaintiff's treating physician were inconsistent with the other first-hand medical evidence.

As her second assignment of error, Plaintiff argues that the ALJ's adverse credibility determination is not supported by substantial evidence because the ALJ failed to conduct a thorough evaluation of her impairments in compliance with controlling social security rulings and regulations. *See* 20 C.F.R § 404.1529 & SSR 96-7p. Plaintiff charges that the ALJ disregarded her testimony that constant radiating pain in her neck, hip, and back prevent her from working. As a result, she cannot stand, walk, or sit for more than 15-20 minutes at time. She also experiences muscle spasms and numbness in her arms, and while her injections provide relief, her pain medication makes her tired and confused. She also alleges depression and anxiety attacks, but testified that she stopped taking antidepressants because she does not believe she needs it. Due to her impairments, she spends five hours lying down during the day, and has to take breaks when performing household chores.[13]

The ALJ found that while Plaintiff's medically determinable impairments could reasonably be expected to produce some of her alleged symptoms, her testimony regarding the intensity, persistence, and limiting effects were not fully credible. Whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the ALJ has

[13]ECF No. 9, pp. 68-99.

the discretion to make a finding on the credibility of the statements, and the determination is entitled to considerable deference. *Foster v. Astrue*, 277 F. App'x. 462 (5th Cir. 2008); *see also Gonzales v. Astrue*, 231 F. App'x 322 (5th Cir. 2007) (adverse credibility determination made by an ALJ was supported by inconsistencies between claimant's testimony and documentary evidence). But the ALJ is not required to follow "formalistic rules in his articulation." *Hernandez v. Astrue*, 278 F.App'x 333, 339 (5th Cir. 2008) (quoting *Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994)). Social Security regulations require the ALJ to consider Plaintiff's daily activities, symptoms, factors that precipitate and aggravate those symptoms, medication and side effects, types of treatment, and functional limitations. *See* 20 C.F.R § 404.1529 & SSR 96-7p. That is what the ALJ did in this case.

The ALJ acknowledged Plaintiff's testimony that she has constant severe pain, but noted that she reported that her steroid injections provided pain relief. She also noted that despite Plaintiff's claims to the contrary, she had never been diagnosed with rheumatoid arthritis and last received mental health treatment in July 2012. The ALJ also made the following observations:

> A review of the record indicates that the claimant has made contradictory statements regarding her ability to work. Although the claimant testified that she has depression, she reported that she voluntarily stopped counseling and quit taking her anti-depressant medication because she did not need it. This suggests the claimant does not believe she has any psychological symptoms caused by depression that would more than moderately interfere with her ability to work. The claimant also testified she was able to drive only short distances, but she told Dr. Fouts she had no difficulties operating a motor vehicle. During the hearing, the claimant stated that she was able

> to perform only a restricted range of daily activities. Throughout the record, however, it has been reported that the claimant's ability to perform activities is not significantly limited. She cooked, made her bed, cleaned her home, used the computer, swept and mopped the floor, washed dishes, did the laundry, and drove. She was able to perform her personal hygiene activities independently, drive her child to school, and pick her up in the afternoon.[14]

Plaintiff does not dispute these contradictions on appeal. She charges simply that the ALJ placed too much emphasis on her daily activities. However, an ALJ has the discretion "to discredit complaints of pain based on the complainant's testimony of her daily activities in combination with the medical records." *Lopez v. Barnhart*, 33 F.App'x 705 (5th Cir. 2002) (quoting *Greigo v. Sullivan*, 940 F.2d 942, 945 (5th Cir. 1991)) (it is within the discretion of the ALJ to discount complaints of pain based upon the medical reports combined with daily activities). No medically acceptable clinical or laboratory diagnostic techniques established the existence of impairments which could be reasonably expected to produce the severity of pain or limitations that Plaintiff alleges. The ALJ's credibility determination fully complies with the applicable legal standards and is supported by substantial evidence.

As her final point of error, Plaintiff claims the ALJ failed to incorporate all of her limitations into his residual functional capacity assessment resulting in a defective hypothetical to the vocational expert and an erroneous finding at step five. Had the ALJ adopted the limitations as opined by Dr. Soriano, Plaintiff argues the ALJ would have found that there were no jobs available that she could perform, and found her to be

---

[14]ECF No. 9, p. 29.

disabled. An ALJ's residual functional capacity assessment and corresponding hypothetical need only incorporate the limitations recognized by the ALJ. *Bowling*, 36 F.3d at 436.

The ALJ made a finding at step four that Plaintiff was capable of performing her past relevant work as an office worker. Additionally, at step five, the ALJ presented a hypothetical to the vocational expert that inquired whether an individual with the claimant's residual functional capacity could perform jobs that exist in significant numbers in the national economy. In response, the vocational expert testified that in addition to her past relevant work as an office worker, Plaintiff could perform work as a ticket-taker, ticket-seller, and router. Plaintiff's representative was also afforded an opportunity to correct any perceived deficiencies at the administrative hearing. No remand is warranted on this issue.

For these reasons, it is the opinion of the undersigned United States Magistrate Judge that Defendant's Motion to Affirm the Commissioner's Decision be granted; that Plaintiff's appeal be dismissed with prejudice; and, that Final Judgment in favor of the Commissioner be entered.

**NOTICE OF RIGHT TO APPEAL/OBJECT**

Pursuant to Rule 72(a)(3) of the Local Uniform Civil Rules of the United States District Courts for the Northern District of Mississippi and the Southern District of Mississippi, any party within 14 days after being served with a copy of this Report and Recommendation, may serve and file written objections. Within 7 days of the service of

the objection, the opposing party must either serve and file a response or notify the District Judge that he or she does not intend to respond to the objection.

The parties are hereby notified that failure to file timely written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. 28 U.S.C. § 636, Fed. R. Civ. P. 72(b) (as amended, effective December 1, 2009); Douglas v. United Services Automobile Association, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

This the 5th day of February 2016.

/s/ Linda R. Anderson
UNITED STATES MAGISTRATE JUDGE